Frank Giard, alias vs. The Memorial Hospital } W. C. A. No. 990

March 28, 1930.

BAKER, J. Heard on petition under Workmen's Compensation Act. On August 12, 1928, the petitioner, who was working for the respondent tending oil burners, slipped upon an oily spot on the floor and fell, fracturing the bone in the upper part of his left arm. At this time he was earning approximately $25 per week and the respondent for 14 or 15 months thereafter paid him the sum of $12.50 per week on account of total disability up until the middle or latter part of November 1929, when it stopped further payments. On or about November 25, 1929, the petitioner broke his left arm again while taking off his vest. It was this occurrence which apparently prompted the respondent to cease payments. This break, according to the testimony, was a few inches above the previous one.

It seems beyond dispute that the respondent cannot in any way be held responsible for the last break or for any of the consequences directly following. The difficult question presented for determination here is whether or not at the time the last break occurred, on November 25, 1929, the petitioner had entirely recovered from the previous break of August 12, 1928, or whether he was still totally or partially disabled therefrom.

The evidence shows that the petitioner had had his arm out of the sling for some six months prior to November, 1929. From medical testimony presented it would seem that the normal recovery from such a break as the petitioner suffered in August, 1928, can be had in from three to six months, depending somewhat on other conditions and the nature of the injury.

In this case, however, we have a history which shows three breaks in the upper portion of the left arm in approximately the same place, all occurring between July, 1925, and August, 1928, the latter break being the fourth and the break in November, 1929, the fifth. The petitioner had been suffering for some years from a disease of the bone in the upper portion of the left arm known as Paget's disease, which condition caused the arm to break easily.

The respondent argues that the evidence shows that in November, 1929, just prior to the final break in the arm, the petitioner had entirely recovered, that he was suffering from no disability due to the accident of August, 1928, and that he was as well as he ever had been prior to the break on said last mentioned date.

On the other hand, the petitioner urges that when the respondent stopped payments petitioner was still suffering total disability, that he was unable to do work of any kind, and that if there was light work which he could do, the "odd lot" doctrine, which has been recognized in this state (*Lupoli* vs. *Atlantic Tubing Co.*, 43 R. I. 299), would apply and enable him to recover as for total disability.

After careful consideration the Court has come to the conclusion that neither of these claims is entirely correct. From the evidence presented the

Court is satisfied that at the time of the final break, November, 1929, the petitioner had not completely recovered from the effects of the previous break in August, 1928. It seems well settled in this state that although a diseased condition predisposes a workman to an accident, or if an employer hires a man suffering from some disability at that time, after an accident occurs the employer cannot set these situations up by way of defence.

*Carroll* vs. *What Cheer Stables*, 38 R. I. 421;

*J. & P. Coats, Inc.*, for an opinion, 41 R. I. 289.

Further, the evidence discloses that the petitioner was examined by a physician on behalf of the respondent on December 11, 1928, February 9, June 3 and September 23, 1929. This witness testified that in his judgment the petitioner had an earning capacity in September, 1929, if he could get any fairly light work to do, but that he was probably partially disabled.

On the other hand, the Court is of the opinion that in November, 1929, the petitioner was not suffering total disability from the break of August, 1928. At that time he had not had the arm in a sling for about six months and had so far recovered that, according to the testimony of the physician above referred to, he could do any fairly light work in which guarded use could be made of his left arm. Bench work, where the right arm would be chiefly employed, or a position as watchman were suggested.

In the opinion of the Court the petitioner does not fall within the "odd lot" doctrine so as to enable him to recover as for total disability. In the first place, it is quite clear that a substantial part of his trouble arises from the diseased condition of his arm rather than from the accident itself. Further, it seems to be the law that if a workman is able to do light work in general rather than odd jobs not

generally obtainable, it is presumed that such work is available. That seems to the Court to have been the petitioner's situation in November, 1929.

33 Amer. Law Reports, Annotated. Note page 122.

For a discussion of cases where an occupational injury accelerates or aggravates a pre-existing sub-normal physical condition, see Bradbury's Workmen's Compensation, 3rd ed., pages 342-350.

The Court finds, therefore, that in November, 1929, at the time of the final break in the arm and at the time when the respondent stopped payments, the petitioner was suffering partial disability from the break of August, 1928.

After due consideration, the Court is of the opinion that the sum of $6.25 per week, or one-quarter of the petitioner's earnings at the time of the accident involved in this petition, would be fair and reasonable to allow him for this partial disability and that, therefore, the petitioner is entitled to the payment of this amount from the date when the respondent ceased payments in November, 1929. As the length of time this partial disability may continue is uncertain, the payments may be made until further order of the Court and the petition for a commutation of payments is denied.

For petitioner: Francis B. Condon.

For respondent: Gardner, Moss & Haslam.